UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CAPITALPLUS EQUITY, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:17-cv-00051 |
| | ) | REEVES/GUYTON |
| TUTOR PERINI BUILDING CORP., | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

CapitalPlus Equity, LLC, has brought this action against Tutor Perini Building Corp. alleging breach of contract, misrepresentation, and fraud. Before the court is a motion filed by Tutor to dismiss or transfer this action [R. 12]. Because the allegations of the complaint contain sufficient factual matter to establish personal jurisdiction over Tutor in the Eastern District of Tennessee, defendant's motion is denied.

**I. Factual Background**

CapitalPlus is a Nevada limited liability company with its principal place of business in Knoxville, Tennessee. Tutor is an Arizona corporation with its principal place of business in Phoenix, Arizona.

CapitalPlus is a financial services company specializing in lending funds to construction companies. CapitalPlus entered into a lending agreement whereby CapitalPlus agreed to lend The Espinosa Group funds in connection with various

1

construction projects. Tutor is the general contractor for a project located in Philadelphia, Pennsylvania. Espinosa had a subcontract with Tutor for work on the Pennsylvania project.

In connection with the project, Tutor required Espinosa to provide a bond to guarantee the performance and payment of its obligations under the subcontract. Tutor informed Espinosa and CapitalPlus that Tutor would not make any payments to Espinosa for its work until Espinosa provided a Letter of Credit (LOC) that guaranteed Espinosa's ability to perform its work. Tutor and CapitalPlus engaged in extensive discussions and negotiations over a period of several months with respect to the LOC and associated escrow agreement. CapitalPlus alleges the discussions and negotiations, multiple phone calls, and emails were exchanged between CapitalPlus and Tutor from their offices in Tennessee and Pennsylvania, respectively. As a result of the discussions and negotiations, Tutor and CapitalPlus agreed that CapitalPlus would post $500,000 collateral to an escrow account to be established with Zions First National Bank. The LOC states that any demand must be presented at CapitalPlus' office in Knoxville, Tennessee, and that the LOC would be "governed by and construed in accordance with the laws of the State of Tennessee."

CapitalPlus agreed to provide the LOC only if Tutor certified that Espinosa was in compliance with the terms of its subcontract. Tutor provided CapitalPlus with the requested letter of compliance stating there was no uncured breach of contract and all completed work and material provided was acceptable to Tutor. Based on this letter of compliance, CapitalPlus issued the LOC. CapitalPlus states it would not have issued the LOC without the letter of compliance from Tutor. CapitalPlus alleges that Tutor was aware at the time of the issuance of the LOC that Espinosa was not in compliance with the terms

2

of the subcontract. Rather, Tutor issued the certification of compliance in order to receive the LOC from CapitalPlus.

After receiving the LOC, Tutor issued a letter stating that Espinosa was in material breach of its subcontract. Tutor also sent a letter to CapitalPlus' office in Knoxville, demanding disbursement of $500,000 from the escrow account because of Espinosa's alleged default on the subcontract. CapitalPlus states that Tutor misrepresented Espinosa's compliance with the subcontract to CapitalPlus' detriment and that CapitalPlus, rather than Tutor, is entitled to the funds deposited in the escrow account.

Tutor moves to dismiss the complaint on the grounds that this court lacks both general and specific personal jurisdiction over Tutor; the complaint fails to state a claim for fraudulent inducement; failure to join indispensable parties; and alternatively, venue is more proper in the Eastern District of Pennsylvania on the basis of *forum non conveniens.*

### III. Analysis

**A.  Personal Jurisdiction**

Tutor argues the complaint should be dismissed because of a lack of personal jurisdiction. CapitalPlus bears the burden of demonstrating that personal jurisdiction exists. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). A district court may decide to rule on the jurisdictional issue upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). This matter has been fully briefed by the parties and affidavits and exhibits have been filed. There is no need for an evidentiary hearing in this matter and the motion will be decided on the record.

3

When a court decides the issue on the basis of the written record alone, plaintiff needs only to make a *prima facie* case of jurisdiction. To survive a motion to dismiss, plaintiff needs only to "demonstrate facts which support a finding of jurisdiction." *Id.* The burden on plaintiff is relatively slight. The court considers the pleadings and affidavits in the light most favorable to the plaintiff. Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (the court does not consider facts proffered by the defendant that conflict with those proffered by the plaintiff); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (a court disposing of a Rule 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal). Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003). Thus, as long as the plaintiff is able to "demonstrate facts which support a finding of jurisdiction," the motion to dismiss will be denied, even in the face of controverting evidence presented by the moving party. *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).

CapitalPlus alleges federal jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. In diversity cases, federal courts apply the substantive law of the forum state to determine whether personal jurisdiction exists over a defendant, subject to constitutional limitations. *Aristech Chem. Int'l Ltd. V. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). The court must determine that a defendant comes within the boundaries of the

state's long-arm statute as well as the requirements of constitutional due process. *Id.* Under the Tennessee long-arm statute, a federal court is permitted to exercise jurisdiction over a defendant if such jurisdiction is within the boundaries of constitutional due process. *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001). Where a state long-arm statute extends to the limits of constitutional due process, the court need only determine whether exercising personal jurisdiction over the defendant would violate constitutional due process. *Artistech*, 138 F.3d at 627.

In order for a non-resident defendant to be subject to the jurisdiction of a court, the defendant must have "certain minimum contacts . . . such that the maintenance of a suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A defendant's minimum contacts with the forum state may create two types of personal jurisdiction, general or specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 748 (2014).

General jurisdiction over a defendant exists where the defendant's contacts with the forum state are "continuous and systematic" such that a defendant should "reasonably anticipate being haled into court there." *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408 U.S. 408, 416 (1984). General jurisdiction allows a defendant to be sued in the forum state even where the cause of action has no relation to the contacts that the defendant has made in that state because the defendant is essentially "at home" in the forum state. *Id*. Here, CapitalPlus does not argue that Tutor is subject to general personal jurisdiction in the Eastern District of Tennessee. Therefore, the court will analyze whether specific jurisdiction exists over Tutor in this court.

Specific jurisdiction allows a defendant to be sued in the forum state only where the issues of the suit derive from or are connected to the contacts that establish jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). The existence of specific jurisdiction is determined by looking at the relationship among the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). For a court to exercise specific jurisdiction that is consistent with constitutional due process, the defendant's "suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 115, 1121 (2014).

The Sixth Circuit has established a three-part test to determine whether the court may exercise specific jurisdiction over a particular defendant. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over defendant reasonable. *Southern Machine Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### 1. Purposeful Availment

The purposeful availment requirement is considered the most important requirement. *Id.* The defendant must have purposefully availed itself of the "privilege of acting in the forum state or causing a consequence in the forum state." *Id.* Requiring that the defendant take purposeful steps in the forum state ensures that a defendant's "random, fortuitous, or attenuated" contacts with the forum state will not subject it to being haled

into court there.  *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Additionally, the defendant's relationship with the forum state must arise out of the contacts that the *defendant itself* created with the forum state.  *Id.*  The unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over the defendant.  *Id.*  Although not decisive, the plaintiff or third party's contacts with the forum state may be significant or important to the due process analysis because the defendant's contacts with the forum state may be intertwined with the transactions with the plaintiff or third party.  *Walden*, 134 S. Ct. at 1122.

Particularly important to this case is that where a defendant has created "continuing obligations between himself and the resident of the forum, he manifestly has availed himself of the privilege of acting there and thus is subject to regulation and sanctions in the forum state for the consequences of his activities."  *Burger King*, 471 U.S. at 473.  The court must look at the quality of the contacts to demonstrate purposeful availment, not just the quantifiable number of contacts that a defendant has with the forum state.  *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1302 (6th Cir. 1989).  The physical presence of the defendant itself in the forum state is not required for a court to have personal jurisdiction over the defendant; however, the minimum contacts requirement must still be met.  *Int'l Shoe*, 326 U.S. at 316.

Viewing the facts in the light most favorable to CapitalPlus, the series of communications Tutor directed to CapitalPlus in Tennessee for the express purpose of inducing CapitalPlus to issue the LOC are sufficient to establish specific personal jurisdiction.  Tutor knowingly directed activity into Tennessee by negotiating and

7

executing a LOC and escrow agreement, which carried with them mutual obligations for performance within the state. All of the emails and other correspondence Tutor sent to and received from CapitalPlus in negotiating the terms and conditions of the LOC and escrow agreement were sent to or received from Tennessee. When a nonresident defendant transacts business by negotiating and executing a contract via telephone and letters to a Tennessee resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in the forum. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). The express terms of the LOC made it reasonably foreseeable that Tutor would be haled into court in Tennessee in the event of breach or other dispute over its terms or operation. The LOC expressly required any request for payment be presented at CapitalPlus' office in Knoxville, Tennessee and that the LOC would be "governed by and construed in accordance with the laws of the State of Tennessee."

Next, CapitalPlus alleges the communications regarding the LOC and escrow agreement contained materially false content and were delivered with fraudulent intent. When the actual content of the communications into the forum gives rise to an intentional tort action, that alone can constitute purposeful availment. *See Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001).

## 2. Arising From

The second criterion under *Southern Machine* asks whether the plaintiff's claims "arise from" the defendant's contacts with Tennessee. The Sixth Circuit has observed that the "arising from" prong is met when the operative facts arise from the defendant's contacts with the state. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). Here, the operative facts for CapitalPlus' claims are clearly related to Tutor's contacts with Tennessee. Tutor contacted CapitalPlus in Tennessee. Tutor's compliance letter was sent to CapitalPlus in Tennessee, and Tutor intended CapitalPlus to rely on the alleged misrepresentations in taking an action in Tennessee – the issuance of the LOC and escrow agreement. And, CapitalPlus' resulting damages occurred in Tennessee. When a defendant has purposefully availed itself of acting in the forum by entering into a contract with a party there, and the cause of action is for breach of that contract, then the cause of action naturally arises from the defendant's activities in the forum state. *Cole*, 133 F.3d at 436.

## 3. Reasonableness

The third prong of the *Southern Machine* test requires that the exercise of personal jurisdiction over the defendant in the forum state must be reasonable. *Southern Machine*, 401 F.2d at 381. This requires a substantial connection between the forum state and the acts of the defendant or the consequences caused by the defendant. *Id.* Where the first two criteria of the Southern Machine test are met, "an inference of reasonableness" arises such that only the unusual case will not meet the reasonableness prong. *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991).

When a defendant has purposefully directed his actions to the forum state or its residents, the defendant is required to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Such considerations include the following factors: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interests in securing the most efficient resolution of the controversy. *Id.* This issue may be disposed of relatively easily because the defendant faces an inference of reasonableness and has presented little to show that defending this suit in Tennessee is unreasonable or burdensome.

Tutor voluntarily conducted business with a Tennessee company, entering into extended negotiations with CapitalPlus and entering into a business transaction, which transaction was contractually agreed to be governed by the laws of the State of Tennessee. Moreover, Tennessee has an interest in enforcing its laws and protecting the interests of its citizens. Further, Tennessee has a strong interest in resolving a contract dispute involving a Tennessee business and a Tennessee choice-of-law provision where the harm occurs within Tennessee. Similarly, CapitalPlus has a strong interest in obtaining relief in the state where it resides. The court finds there is a sufficiently substantial connection between Tutor and Tennessee to make the exercise of personal jurisdiction over Tutor fair and reasonable. Tutor's motion to dismiss the complaint on the grounds that this court lacks personal jurisdiction over Tutor is without merit, and the motion is denied.

**B. Venue**

Tutor moves the court for an order transferring this action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) as alternative relief. For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) is permissive in nature, and as its language suggests, district courts have broad discretion in considering motions thereunder. *Encore Med. LP v. Kennedy*, 861 F.Supp.2d 886, 895 (E.D.Tenn. 2012). The burden is on the moving party to establish the need for a change of venue, and if the moving party fails to make such a showing, then the plaintiff's choice of forum will be given deference. *Gomberg v. Shosid*, 2006 WL 1881229 at *10 (E.D.Tenn. 2006).

The threshold consideration is whether the action is one that could have originally been brought in the proposed transferee district court. *Id.* CapitalPlus concedes that it could have brought its claims in the Eastern District of Pennsylvania.

The second step is a balancing of factors. A court may consider any factor that would make the eventual trial easy, expeditious, and inexpensive. *Cherokee Export Co. v. Chrysler Int'l Corp.*, 142 F.3d 432 (6th Cir. 1998). In ruling on a motion to transfer under § 1404(a), a district court will consider the following nine private and public interests: (1) convenience of witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and

events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances. *Mardini v. Presidio Dev. LLC*, 2011 WL 111245 at *6 (E.D. Tenn. 2011). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *Nicol v. Koscinski*, 188 F.2d 537, (6th Cir. 1951).

The court finds that only one of the nine relevant considerations arguably weighs in favor of transfer. The first factor, the convenience of the witnesses, weighs against transfer. Under this factor, the court considers the relevance and the materiality of the information that the key witnesses will provide in the litigation. *In Re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The party seeking transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover. *Smith v. Kyphon, Inc.*, 578 F.Supp.2d 954, 963 (M.D. Tenn. 2008). The residence of each key witness is also important. *Kendell v. Whig Enters. LLC*, 2016 WL 354876 at *7 (S.D. Ohio Jan. 29, 2016). The party requesting transfer must show that the witnesses will be "severely inconvenienced" if the litigation proceeds in the plaintiff's chosen forum. *Malibu Boats, LLC v. Nautique Boat Co.*, 2014 WL 202379 at *5 (E.D. Tenn. Jan. 16, 2014). Here, Tutor has not specified the witnesses to be called, what their testimony will cover, or the residence of such witnesses.

The second factor, availability of judicial process to compel the attendance of unwilling or uncooperative witnesses, is neutral. Judicial process is available to compel witnesses in the Eastern District of Tennessee as well as the Eastern District of

Pennsylvania. Section 404(a) provides for transfer only to a *more* convenient forum, not to an *equally* convenient forum.

The third factor, location of the relevant documents or records, and the relative ease of access to sources of proof, weighs in favor of transfer. Tutor argues that a determination of Espinosa's conduct on the project and the default under the LOC by reason of such conduct is necessary in order to prove the validity of the letter of compliance and to address CapitalPlus' allegations that the letter of compliance was fraudulent and/or contained a misrepresentation which fraudulently induced CapitalPlus to issue the LOC. Such a determination will involve the books and records of Tutor, which are located in Pennsylvania, the depositions of Tutor's employees located in Pennsylvania, and the books and records of Espinosa, and the depositions of employees and principals of Espinosa. Because CapitalPlus alleges fraud in the inducement of the contract, the court finds that evidence tending to show whether Espinosa was in compliance with the project subcontract is relevant to CapitalPlus' fraud charge. CapitalPlus argues this case is entirely about determining the respective rights and obligations of Tutor and CapitalPlus with regard to the LOC and escrow agreement, nothing more. CapitalPlus states all of the emails and other correspondence Tutor sent to and received from CapitalPlus in negotiating the terms and conditions of the LOC and escrow agreement were sent to or received from Tennessee. Presumably, both parties have access to this evidence in their respective offices. However, to the extent that Espinosa's performance of the contract in Pennsylvania is relevant to the fraud charge, this factor weighs in favor of transfer.

The fourth factor, residence and convenience of the parties, is neutral. One of the parties will be inconvenienced to some extent by having to litigate in either the Eastern District of Tennessee (which will be convenient for CapitalPlus but not for Tutor) or the Eastern District of Pennsylvania (which will be convenient for Tutor but not for CapitalPlus).

The fifth factor, relative financial means and resources of the parties, weighs against transfer. Tutor does not contend that it lacks the financial means to defend itself against litigation in this district.

The sixth factor, locus of the operative facts and events that gave rise to the dispute or lawsuit, weighs against transfer. As stated previously, the operative facts for CapitalPlus' claims took place in Tennessee. Tutor contacted CapitalPlus in Tennessee. Tutor's compliance letter was sent to CapitalPlus in Tennessee, and Tutor intended CapitalPlus to rely on the alleged misrepresentations in taking an action in Tennessee – the issuance of the LOC and escrow agreement. CapitalPlus' resulting damages occurred in Tennessee.

The seventh factor, each judicial forum's familiarity with the governing law, is neutral. The agreement at issue contains a Tennessee choice of law provision, but does not contain a Tennessee choice of forum provision. The court is confident that the district court in Pennsylvania is equally capable of adjudicating plaintiffs' claims in accordance with Tennessee law.

The eighth factor, the deference and weight accorded to the plaintiff's choice of forum, weighs against transfer. CapitalPlus chose to bring this action in its home state of Tennessee. Unless the balance of factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Finally, the court finds that ninth factor, the interests of justice, weighs against transfer. Under § 1404(a), issues of "systemic integrity and fairness . . . come under the heading of the interest of justice." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Section 1404(a) was designed to prevent unnecessary inconvenience and expense to parties, witnesses and the public. *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 21 (1960). Considering that most of the factors that the court has reviewed up to this point weigh against transfer, the court finds nothing in the record to support transfer under this factor. The interest of justice, therefore, does not require transfer.

**C.      Fraudulent Inducement**

Tutor argues that the LOC's integration clause precludes CapitalPlus' fraudulent inducement claim. Generally, merger or integration clauses are routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated. *See Security Watch, Inc. v. Sentinel Sys. Inc.*, 176 F.2d 369, 372 (6th Cir. 1999). However, courts hold that merger clauses should not be used to restrict the scope of the proof with regard to a fraudulent inducement claim. *See Lowe v. Gulf Coast Dev. Inc.*, 1991 WL 220576 at *5 (Tenn.Ct.App. Nov. 1, 1991); *Expresit*

15

*Convenience Stores, LLC v. Transaction Tracking Techs. Inc.*, 2007 WL 30737 at *8 (M.D. Tenn. Jan. 29, 2007).

In *Lowe*, the Tennessee Court of Appeals stated:

> The principle of integration embodies the rule that all prior statements or negotiations are merged into a written contract intended by the parties to be a complete expression of their agreement. It does not apply in cases involving fraud or mistake, and, therefore, it should not be used to restrict the scope of the proof with regard to the [plaintiff's] fraudulent inducement claim.

*Id.* at *5.

Moreover, although contracts are presumed to contain the true intention of the parties and should be enforced as written, Tenn. Code Ann. § 47-50-112 provides that "nothing herein shall limit the right of any party to contest the agreement on the basis that it was procured by fraud or limit the right of any party to assert any other rights or defenses provided by common law or statutory law in regard to contracts." Thus, Tennessee law recognizes that the presence of an integration clause does not defeat a claim for fraudulent inducement. Accordingly, the court finds the LOC's integration clause does not preclude consideration of the pre-contractual evidence in reviewing the fraudulent inducement claim.

### D. Indispensable Parties

Next, Tutor argues that the complaint should be dismissed for failure to join two indispensable parties – Espinosa and Zions First National Bank. Tutor avers that Espinosa is a necessary party because it is the contractual relationship between Espinosa and Tutor that may have led, in part, to Espinosa's default under the subcontract.

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal of a plaintiff's claim when the plaintiff fails to join an indispensable party as required by Federal Rule of Civil Procedure 19. Under Rule 19(a), a plaintiff must join a party when "in that person's absence, the court cannot accord complete relief among existing parties." A party seeking dismissal under Rule 12(b)(7) bears the burden of showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by his absence. *See Boles v. Greeneville Housing Auth.*, 468 F.2d 476, 478 (6th Cir. 1982).

In order to determine whether Espinosa is an indispensable party[1], the court follows a two-step process. First, the court decides whether Espinosa qualifies as a "necessary" party pursuant to Rule 19(a). A party is necessary where the party "is needed for just adjudication" A party is needed for just adjudication if: (1) complete relief cannot be given to existing parties in its absence; (2) disposition in its absence may impair its ability to protect its interest in the controversy; or (3) its absence would expose existing parties to substantial risk of double or inconsistent obligations. *Safeco Ins. Co. v. City of White House,* 36 F.3d 540, 546 (6th Cir. 1994). Second, if a party qualifies as "necessary," the court must then determine its dispensability. A person or entity is only indispensable, within the meaning of Rule 19 if it is necessary, its joinder cannot be effected, and the court determines that it will dismiss the pending case rather than proceed in the case without the absentee. *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004).

---

[1] As Tutor has presented no facts or citation to legal authority regarding its assertion that Zions First National Bank is an indispensable party, the court will deem the issue waived.

Here, CapitalPlus states that no matter the outcome of the dispute with Tutor, Espinosa will not receive any proceeds from the LOC/escrow agreement. Nothing in the complaint seeks to adjudicate Espinosa's rights, as Espinosa is not a party to the LOC. Well-settled doctrine governing letters of credit recognizes that a letter of credit is a contract between the bank and the beneficiary that is separate and distinct from the commercial contract between the beneficiary and the bank's customer. *Marino Indus. Corp. v. Chase Manhattan Bank, NA*, 686 F.2d 112, 115 (2nd Cir. 1982) ("the letter of credit is not tied to or dependent upon the underlying commercial transaction"). Tennessee statutes governing letters of credit are consistent with this general principle. Tenn. Code Ann. § 47-5-103(d) provides:

> Rights and obligations of an issuer to a beneficiary or nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

Therefore, the court finds that the LOC is independent from the Pennsylvania construction project to which it relates. Espinosa's absence will not prevent the court from adjudicating complete relief between CapitalPlus and Tutor. In addition, Espinosa's interests will not be impaired; nor will Tutor face the possibility of multiple lawsuits or jeopardy of double recovery. Accordingly, Tutor's motion to dismiss for failure to join Espinosa as an indispensable party is denied.

## IV. Conclusion

In light of the foregoing discussion, Tutor's motion to dismiss or for change of venue [R.12] is **DENIED**, and CapitalPlus' motion to strike [R. 22] is **DENIED as moot.**

The stay in this case is **LIFTED.**  The parties may proceed with trial preparation in accordance with the scheduling order.

**IT IS SO ORDERED.**

**ENTER:**

_____/s/ Pamela L. Reeves_____
**UNITED STATES DISTRICT JUDGE**